UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GILBERT HOWELL, | ) | CASE NO. 1:06CV1235 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | Magistrate Judge George J. Limbert |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | **REPORT AND RECOMMENDATION** |
| Commissioner of Social Security, | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| Defendant. | ) | |

Gilbert Howell ("Plaintiff"), seeks judicial review of the final decision of Jo Anne Barnhart ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying Plaintiff's applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1 at 1-2. Plaintiff asserts that the Administrative Law Judge ("ALJ") erred in finding that Plaintiff failed to meet the requirements of mental retardation, as defined in 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05(C). ECF Dkt. #11 at 9. For the following reasons, the undersigned recommends that the Court reverse the Commissioner's decision and remand the case for further factfinding, testimony, and articulation by the ALJ to determine: (1) whether Plaintiff is mentally retarded under the standard set forth in the introductory paragraph of Listing12.05; and (2) whether Plaintiff has a valid IQ between 60 and 70, as Listing 12.05C requires.

**I.     PROCEDURAL HISTORY**

On July 23, 2002, Plaintiff filed concurrent applications for DIB and SSI under the Social Security Act, 42 U.S.C. §§ 416(I), 423,1382c. ECF Dkt. # 9 ("Tr.") Tr. 58-60, 268-70. On October 18, 2002, the SSA denied Plaintiff's disability applications. *Id.* at 40-43. On January 24, 2003, the SSA reconsidered Plaintiff's claims and denied his applications again. *Id.* at 45-47. On March 18, 2003, Plaintiff requested an administrative hearing for the purpose of reviewing

his denied applications, and the SSA granted the hearing. *Id.* at 31-34, 48.

On August 10, 2004, Plaintiff appeared with counsel at a hearing before an ALJ. *Id*. at 334. At the hearing, the ALJ received testimony from: Plaintiff; Dr. Jonathan W. Nusbaum, an independent medical expert; and Dr. W. Bruce Walsh, an independent vocational expert. *Id.* at 334-83. Following the hearing, Plaintiff's counsel supplemented the case record with a report of a psychological evaluation by Dr. Griffith R. Dye. *Id*. at 259-63.

On December 28, 2004, the ALJ issued a written decision denying Plaintiff's disability claim. *Id*. at 17-30. The ALJ found that Plaintiff was not disabled because he had failed to establish that he met the requirements of Listings 12.04 or 12.05C. *Id*. at 24-26. The ALJ reasoned that the one doctor who diagnosed Plaintiff with mental retardation had not conducted a complete evaluation. *Id*. at 24, 26. The ALJ further held that Plaintiff possessed the residual functional capacity ("RFC") to perform work requiring a light level of exertion, subject to four restrictions: (1) no standing and/or walking for longer than one hour at a time or six hours total in a workday; (2) no sitting for longer than two hours at a time or six hours total in a workday; (3) no more than occasional bending or twisting; and (4) no more than simple, repetitive, routine tasks. *Id*. at 26. The ALJ found that Plaintiff was able to perform the job duties for the full range of unskilled sedentary jobs and 60% of available jobs in the local economy requiring unskilled light exertional work. *Id*. at 28.

Plaintiff filed a request for review of the ALJ's decision with the SSA's Appeals Council. *Id*. at 11. On March 20, 2006, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of Commissioner. *Id*. at. 7-9. Plaintiff now seeks judicial review of the ALJ's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). ECF Dkt. #1 at 1. Specifically, Plaintiff asserts that the ALJ erred in accepting the medical opinion of an independent psychologist over the opinion of a psychologist Plaintiff hired. ECF Dkt. #11 at 10. Plaintiff claims the ALJ's decision is erroneous because the independent psychologist stated that there was no basis for believing Plaintiff had the onset of mental retardation prior to the age of

18, but he was unaware of the subaverage IQ score Plaintiff achieved at the age of 14. *Id*.

## II.     SYNOPSIS OF THE EVIDENCE

At the administrative hearing, Plaintiff asserted that he satisfied the requirements of Listing 12.05C because he had: an IQ of 62 at age 14; a diagnosis of mental retardation; and significant physical impairments due to carpal tunnel and degenerative disc disease. The Plaintiff introduced the following evidence in support of his claim:

### A. Personal Background Evidence

Plaintiff is approximately 49 years old. *See* Tr. at 58. He currently resides with his wife, in Mansfield, OH. *Id*. at 342-44. Prior to meeting his wife in 1999, Plaintiff resided with his mother. *Id*. Due to difficulties he had paying bills, buying groceries, and paying rent, Plaintiff has lived on his own for only a few months. *Id*. at 367-68.

Plaintiff has approximately a tenth grade education. *Id*. at 81, 112, 345-46. At age 14, Plaintiff took an intellectual quotient ("IQ") test that indicated he had limited intellectual functioning. Consequently, school administrators offered to place Plaintiff in special education classes for the educable mentally retarded, but his mother would not consent to the placement. *Id*. at 345-46. Plaintiff remained in regular classes until the eleventh grade, when he began withdrawing from classes. *Id*. at 112. He completely withdrew from school in the twelfth grade. *Id*. Due to inferior reading abilities, Plaintiff has not been able to pass a General Educational Development test ("GED test"), a military entrance exam, or a driving test. *Id*. at 343, 345-46, 348.

Plaintiff's recreational activities include: reading the Bible, attending church, watching television, playing word games with his family, and jogging. *Id*. at 346, 359-62, 364. Plaintiff testified that he needs help from his mother and his sister to read the Bible. *Id*. at 346. He also testified that he is unable to jog because of pain in his joints. *Id*. at 361.

Plaintiff has a history of alcohol and drug abuse. *Id.* at 354. He was convicted of trafficking cocaine and marijuana, and he served time in prison for the offense. Plaintiff claims

that he has not used drugs or alcohol since 2000. *Id*. at 216, 354-55.

### B. Vocational Evidence

During the past 15 years, Plaintiff has worked as: a hotel housekeeper, who was responsible for cleaning rooms and making beds; a car wash attendant, who was responsible for towel drying cars after they exited a washing machine; a machine operator, who was responsible for stacking parts as they were produced by a machine; a box bander, who was responsible for inserting stacks of folded boxes into a machine that would secure each stack with a band; and an assistant in a nursing home, who was responsible for bathing the elderly, brushing their teeth, and combing their hair. *Id*. at 86-91, 348-52. During Plaintiff's administrative hearing, the vocational expert, Dr. Walsh, classified this past work as follows: hotel housekeeping requires light exertion and no skill; car wash attending requires light exertion and no skill; machine operator work is sedentary and requires no skill; box banding requires medium exertion and no skill; and working as an assistant at a nursing home requires medium exertion and a semiskilled employee. *Id*. at 380.

The ALJ posed a hypothetical question to Dr. Walsh, asking him to determine what type of jobs Plaintiff would be able to perform if the ALJ were to determine that Plaintiff was a younger individual with: a limited education; the past work experience described above; and mental and physical impairments limiting his abilities to only simple, routine, one and two-step tasks. *Id*. at 381. Dr. Walsh opined that Plaintiff could perform the full range of sedentary, unskilled work and 60% of the available jobs in light, unskilled work. *Id*. at 382. Dr. Walsh offered jobs as an inspector, an assembler, or a ticket taker as examples of jobs that Plaintiff could perform. *Id*.

### C. Medical Evidence

**(i) Evidence of mental impairment**

At the administrative hearing, Plaintiff introduced evidence of mental examinations or evaluations by four different doctors. First, in January 1973, Thomas W. Hall, Jr., a school

-4-

psychologist, administered an IQ test and recommended placing him in classes for the educable mentally retarded.  *Id*. at 109.  Second, in December 2002, Dr. William B. Schonberg examined Plaintiff, at the request of the Ohio Bureau of Disability Determination ("OBDD"), to determine Plaintiff's intellectual functioning and mental status.  *Id*. at 169.  In November 2003, Dr. Schonberg examined Plaintiff again, this time at the request of Richland County Job and Family Services.  *Id*. at 215.  Dr. Schonberg administered an IQ test both times he examined Plaintiff.  *Id*. at 175, 221.  Third, in January 2003, Dr. Douglas Pawlarczyk, a state agency psychologist, reviewed Plaintiff's medical records, and assessed his mental functioning under the criteria for Listing 12.05.  *Id*. at 122-37.  Fourth, on August 18, 2004, following the administrative hearing, Dr. Griffith R. Dye examined Plaintiff at the request of Plaintiff's counsel.  *Id.* at 259.  Dr. Dye did not administer an IQ test. *Id*.

### Examination by school psychiatrist Thomas Hall

In January 1973, Plaintiff was first tested for mental deficiency at the age of 14.  *Id*. at 109.  His school psychologist, Thomas W. Hall, Jr. administered a Wechsler Intelligence Scale for Children test  ("WISC test") to determine Plaintiff's IQ.  *Id*.  Plaintiff scored as follows:  Verbal IQ 66; Performance IQ 64; and Full Scale IQ 62.  *Id*.  Dr. Hall suggested placing Plaintiff in a class for the educable mentally retarded, but Plaintiff's mother did not sign the parental consent form that would have allowed him to be placed in the special education class.  Tr. 109-10.

### Examinations by Dr. Schonberg

In December 2002, Dr. Schonberg evaluated Plaintiff's mental condition at the request of the OBDD.  *Id*. at 169.  Dr. Schonberg interviewed and examined Plaintiff, and then he drafted a report setting forth his diagnosis of borderline intelligence.  *Id*. at 169-178.

During the interview, Dr. Schonberg learned that Plaintiff maintained contacts with his mother and three of his nine siblings.  *Id*. at 169.  Plaintiff stated he had a "great" relationship with his fiancee.  *Id*.  Dr. Schonberg noted that Plaintiff had repeated three to four grades in

school. *Id*. Plaintiff had complaints of a constant pain in his wrists, but had not been taking medication. *Id*. at 170. Dr. Schonberg's report indicates that, from 1988 to 1997, Plaintiff consumed up to four 24-ounce bottles of beer per day and would wake up in the mornings shaking from drinking too much alcohol. *Id*. Plaintiff would occasionally arrive to work late and hung over. *Id*. Plaintiff used marijuana daily for nearly twenty years, and he used cocaine twice. *Id*. Dr. Schonberg noted that Plaintiff had not consumed cocaine or alcohol since 1997, and he had not consumed marijuana since 2000. *Id*. Plaintiff was imprisoned for 35 days following a conviction for trafficking drugs in 1994. *Id.* Dr. Schonberg documented Plaintiff's work history and noted that Plaintiff stopped working in 2001 because of "problems with his hands." *Id.*

During the mental examination, Dr. Schonberg observed Plaintiff as logical, coherent, and goal directed. *Id*. at 171. Plaintiff reported feelings of depression when the pain in his hands would prevent him from completing a task. *Id*. Plaintiff was alert and oriented to person, place, date, and situation. *Id*. He was able to recall present and past events without obvious difficulty. *Id*. Plaintiff could recall his age, birth date, and social security number. *Id*. He was able to make change from $10 and could subtract serial sevens. *Id*. at 171-72.

Dr. Schonberg then administered a Wechsler Adult Intelligence Scale III IQ test ("WAIS-III"), a Wechsler Memory Scale-III test ("WMS-III"), and a Nelson-Denny reading test. *Id*. at 172. Plaintiff's WAIS-III IQ tests scores were: Verbal IQ 75; Performance IQ 74; and Full Scale IQ 72. *Id*. Dr. Schonberg noted that Plaintiff's highest score during the WAIS-III test was during the immediate auditory memory section, and his weakest score was on a measure of verbal concept formation. *Id*. Dr. Schonberg summarized the results of the WMS-III test in a table. Tr. at 176. Plaintiff ranked in the extremely low percentile range (in the second percentile or lower) for five of the eight categories of memory. *Id* at 172, 176. More specifically, Dr. Schonberg found Plaintiff's general memory to be below the first percentile. *Id*. at 172. Dr. Schonberg considers general memory to be the best measure of abilities that are critical for

-6-

effective day-to-day activities. *Id*. at 172-73. Based on the Nelson-Denny reading test, Dr. Schonberg determined that Plaintiff was reading at less than the 3.8 grade level in terms of reading comprehension. *Id.* at 173.

In November 2003, Dr. Schonberg reexamined Plaintiff and administered a second WAIS-III IQ test. *Id*. at 215, 218. Plaintiff scored as follows: Verbal IQ 66; Performance IQ 68; and Full Scale IQ 64. *Id*. at 218. Based on his second examination, Dr. Schonberg stated that the clinical impression of cognitive functioning was in the borderline to mildly retarded range. *Id*. Dr. Schonberg diagnosed Plaintiff with borderline intelligence because, "[t]here [was] no evidence to indicate that his I.Q. was less than 70 prior to his 18th birthday and he was in regular classes in school suggesting that his I.Q. would not have been that low." at 219. To the contrary, during Dr. Schonberg's first examination, he noted that Plaintiff repeated anywhere from three to four grades in school. *Id*. at 169. Dr. Schonberg also diagnosed a dysthymic disorder. *Id*. at 219

Dr. Schonberg concluded that Plaintiff's ability to withstand daily pressures of a work environment were moderately impaired due to depression and below average intellectual functioning. *Id*. at 220. Dr. Schonberg also concluded that Plaintiff had sufficient judgmental and common sense reasoning ability to live independently, to make important decisions, and to manage his funds. *Id*. at 218. Dr. Schonberg determined that Plaintiff did not require treatment for substance abuse. *Id*. He ultimately concluded that Plaintiff was able to conduct simple repetitive work tasks, but he could become labile at times. *Id*.

Since Dr. Schonberg based his opinion on the fact that there was no indication of an onset of mental retardation prior to Plaintiff's 18th birthday, it is important to note that Dr. Schonberg's file indicates that both of the WAIS-III tests upon which he relied were administered by "Tom Hall, M.A." It is unclear whether the person who administered the WAIS-III tests in December 2002 and November 2003 was the same person as "Thomas W. Hall, Jr.," who administered the WISC test in January 1973, when Plaintiff achieved a Full Scale

score of 62 at the age of 14.  *See* Tr. at 109, 175, 221.  If it was the same person, perhaps Dr. Schonberg did have access to the results of Plaintiff's 1973 IQ test.

### Evaluation by Dr. Pawlarczyk

In January 2003, Dr. Pawlarczyk, completed a Mental Residual Functional Capacity Assessment Form for Plaintiff.  *Id*. at 122.  Although Defendant contends that Dr. Pawlarczyk is a state agency psychologist who reviewed Plaintiff's medical records and assessed his mental functioning under the criteria for Listing 12.05, the basis of Dr. Pawlarczyk's opinions is unclear because he did not indicate which documents he reviewed in reaching his opinions.  *See* ECF Dkt. 13 at 5, Tr. at 122-37.  Since Dr. Pawlarczyk indicated that his assessment ranged from October 2001 to January 2003, he was most likely not aware of the IQ test Dr. Hall administered in January 1973, when Plaintiff achieved a Full Scale score of 62 at the age of 14.

Based upon the Plaintiff's diagnosed borderline intelligence, Dr. Pawlarczyk determined that Plaintiff did not satisfy the diagnostic criteria of the mental retardation set forth in Listing12.05.  *Id*. at 129.  Dr. Pawlarczyk noted marked limitations in Plaintiff's ability to understand and remember detailed instructions and to carry out detailed instructions.  *Id*. at 122.  He noted a moderate limitation in Plaintiff's ability to perform activities within a schedule, to maintain regular attendance, to be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, and to respond appropriately to changes in the work setting.  *Id*. at 123-24.  Dr. Pawlarczyk opined that Plaintiff could carry out short, simple instructions and could tolerate the stress of everyday work activity.  *Id*. at 124.

### Examination by Dr. Dye

In August 2004, following the administrative hearing, Dr. Dye, examined Plaintiff and diagnosed him with cognitive retardation.  *Id*. at 259-63.  Dr. Dye's examination included a review of Plaintiff's records, an interview with Plaintiff and his wife, and a Wechsler Individual

Achievement Test, Second Edition, Word Reading subtest ("WIAT-II").  *Id*. at 259.  Dr. Dye elected to rely on Plaintiff's previous IQ tests instead of administering an additional IQ test.  *Id*.

During the interview with Plaintiff's wife, Dr. Dye noted that she offered little insight because she could not differentiate between what Plaintiff was unable to do as a result of physical limitations and what he was unable to do as a result of intellectual limitations.  *Id*.  She stated that she did not trust Plaintiff to pay the household bills.  *Id*. at 260.  Based on the fact that Plaintiff has never lived on his own for a significant period of time, Dr. Dye concluded that Plaintiff lacks that ability to function at a level expected of independent people.  *Id*.

Dr. Dye administered the WIAT-II reading test and determined that Plaintiff could read at a 1.5 grade level.  *Id*.

Based on a review of Plaintiff's records, Dr. Dye concluded that Dr. Schonberg incorrectly diagnosed Plaintiff with borderline intelligence.  *Id*. at 260-61.  Dr. Dye stated that Dr. Schonberg conducted his evaluations without access to Plaintiff's school records indicating cognitive developmental deficiencies at an early age.  *Id*. at 261.  Dr. Dye also noted contradictions in Dr. Schonberg's reports.  *Id*.  He noted that one of Dr. Schonberg's reports states Plaintiff repeated three to four grades and was suspended for truancy.  Tr. at 261, *see also* Tr. 169.  Dr. Schonberg's other report states that Plaintiff did not repeat any grades and was never suspended for truancy.  Tr. at 261, *see also* Tr. at 215.  Dr. Schonberg did not indicate the source of his information in either report.  Tr. at 261.  Dr. Dye noted, however, that if Dr. Schonberg gathered the information from interviews with Plaintiff, the inconsistencies could indicate a faulty memory, which is a characteristic of a very low IQ.  *Id*. at 261-62.  Dr. Dye also took issue with Dr. Schonberg's conclusion that Plaintiff had sufficient judgment abilities to manage money and to make important decisions.  *Id*. at 261.  Dr. Dye stated that, although Plaintiff's IQ score of 72 was consistent with an ability to conduct simple addition and subtraction, Dr. Schonberg pointed to no empirical evidence of Plaintiff's ability to make rational decisions.  *Id*.  In determining Plaintiff's ability to follow directions and to read, Dr.

Schonberg focused on Plaintiff's borderline scores in the immediate categories of memory, which comprise three of the eight categories of memory. *Id*. Dr. Dye contended that Dr. Schonberg's assessment overlooked Plaintiff's significant weakness in the other five categories of memory, which demonstrated a deficiency in long-term memory. *Id*. Dr. Dye stated that long-term memory is important for occupational functioning. *Id*.

Dr. Dye concluded his report by stating that Dr. Schonberg's conclusions were contrary to the IQ tests he administered. *Id*. at 263. Therefore, Dr. Dye believed that Dr. Schonberg's diagnosis of borderline intelligence rested on "thin evidence." *Id*.

### (ii) Evidence of physical impairment

Plaintiff claims he cannot work due in part to persistent back pain and wrist pain. *Id*. at 349. On April 29, 2004, Dr. Sung Taylor conducted a magnetic resonance imaging test ("MRI") and found Plaintiff had signs of a herniation and degenerative disc disease. *Id*. at 227. On November 7, 2002, Dr. Mei-Chiew Lai conducted an electromyographic examination ("EMG") and found signs of peripheral neuropathy of demyelinating type and carpal tunnel syndrome in the Plaintiff's right and left wrists. *Id*. at 198. Dr. Lai stated that he could not make a definite diagnosis of carpal tunnel syndrome because there were no significant discrepancies of the sensory distal latencies or the motor distal latencies between the median nerve and the ulnar nerve. *Id*. On November 12, 2003, Dr. Lai diagnosed Plaintiff with carpal tunnel syndrome in both wrists. *Id*. at 190. He stated that it would be necessary for Plaintiff to have surgical repair. *Id*. Dr. Lai opined that Plaintiff was unemployable due to his hernia, back pain, and carpal tunnel syndrome. *Id*. at 191.

At the administrative hearing, Dr. Nusbaum, the independent medical expert, testified that he had reviewed Plaintiff's medical records. *Id*. at 373. He testified that Plaintiff's x-rays demonstrated mild degenerative joint disease. *Id*. at 374-75. He disagreed with Dr. Lai's diagnosis of carpal tunnel syndrome. *Id*. at 375. Dr. Nusbaum believed there was no definite EMG evidence of carpal tunnel syndrome. *Id*. Dr. Nusbaum conceded that Plaintiff may have

tendinitis. *Id*. He further opined that the combination of Plaintiff's back pain and wrist pain would result in functional limitations from a physical standpoint. *Id*. at 376.

### III. STATEMENT OF THE LAW

#### A. Steps to Evaluate Entitlement to Social Security Benefits

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (§§20 C.F.R. 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (§§20 C.F.R. 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see §§20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (§§20 C.F.R. 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (§§20 C.F.R. 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (§§20 C.F.R. 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps, and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering his age, education, past work experience and RFC. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

#### B. Plaintiff's Burden under Listing 12.05C

In the third step of the analysis to determine a claimant's entitlement to SSI or DIB, it is the claimant's burden to bring forth evidence to establish that his impairment meets or is

-11-

medically equivalent to a listed impairment. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). In order to meet a listed impairment, the claimant must show that his impairment meets all of the requirements for a listed impairment. *Hale v. Sec'y,* 816 F.2d 1078, 1083 (6th Cir. 1987); 20 C.F.R. § 404.1525(d). An impairment that meets only some of the medical criteria does not qualify, despite its severity. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

In order to establish a disability pursuant to Listing 12.05C, a claimant must meet three requirements: (1) he must satisfy the introductory paragraph of Listing 12.05, which requires the showing of significantly subaverage general intellectual functioning with deficits in adaptive functioning that had initially manifested prior to the age of 22; (2) he must establish that he meets the first requirement of 12.05C by showing that he has a valid verbal, performance, or full-scale IQ of 60 through 70; and (3) he must establish that he meets the second requirement of 12.05C by showing he has a physical or mental impairment, other than the mental retardation impairment, that imposes an additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P, App.1, Listings 12.00A., 12.05, 12.05C; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

### C. Standard of Review

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. The Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, the Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v.*

*Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.; Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984). Furthermore, in reviewing the ALJ's decision, deference is due to the ALJ's credibility determinations. *See Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1234 (6th Cir. 1993). A reviewing court may not retry the case, resolve factual or evidentiary conflicts, or decide questions of credibility. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

## IV.      ANALYSIS

**A. The Court should remand Plaintiff's case because the ALJ was unjustified in relying upon Dr. Schonberg's opinion.**

At issue in this case is whether the ALJ erred in accepting Dr. Schonberg's report for the proposition that Plaintiff did not have mental retardation. ECF Dkt. #11 at 10. Plaintiff claims the ALJ's decision to accept Dr. Schonberg's report as authoritative is erroneous because Dr. Schonberg stated there was no basis for believing Plaintiff had the onset of mental retardation prior to the age of 18, but he was unaware of the subaverage IQ score Plaintiff achieved at the age of 14. *Id*.

The determinative question is whether a reasonable mind would accept Dr. Schonberg's opinion as adequate support for the ALJ's conclusion that Plaintiff was not disabled. *See Walters, 127 F.3d at 532.* The Court should find that the ALJ's opinion was not based on substantial evidence because Dr. Schonberg's report, upon which the ALJ expressly relied, specifically based its conclusion on the misplaced belief that there was no evidence of onset of cognitive retardation prior to the age of 18. *See* Tr. 24-26, 219. Again, Dr. Schonberg's report states:

-13-

> Intellectually, it would appear that the claimant would not meet criteria for mild mental retardation even though his I.Q. is 70 at this time. There is no evidence to indicate that his I.Q. was less than 70 prior to his 18th birthday and he was in regular classes in school suggesting that his I.Q. would not have been that low.

*Id*. at 219. The Sixth Circuit Court of Appeals has stated that it is the claimant's burden to challenge the accuracy of IQ testing. *Smith v. Sullivan*, No. 89-3904, 1990 WL 92633 at * 2 (6th Cir. July 3, 1990), unreported. In this case, Plaintiff introduced evidence calling the validity of Dr. Schonberg's opinions into question. At the hearing, Plaintiff's attorney verified with the ALJ that the Plaintiff's case record included his school records. Tr. at 341-42. Moreover, Plaintiff's attorney told the ALJ that Dr. Schonberg had made an invalid assumption about the onset of Plaintiff's cognitive impairment because there was evidence of an "IQ problem" before the age of 22. *Id*. at 341. The ALJ responded that there must have been a diagnosis of mental retardation in the past, and an IQ score of 60-70 alone is insufficient to satisfy the requirements of Listing 12.05C. *Id*. The ALJ was correct that a claimant must present a diagnosis of mental retardation and a valid IQ score between 60 and 70. *See* Listings 12.00A., 12.05, 12.05C; *Foster*, 279 F.3d at 354. In this case, however, Plaintiff did so by presenting: (1) Dr. Hall's IQ test and recommendation for placement in a class for the mentally retarded; and (2) Dr. Dye's report setting forth a diagnosis of cognitive retardation. Tr. at 109, 259-63.

While the ALJ retains the responsibility for making the ultimate determination of disability, he may not reject one expert's opinion in favor of another unless the opinion upon which he ultimately relies is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Schuler v. Commissioner of Social Security*, No. 03-3734.,109 Fed.Appx. 97, 101 (6th Cir. September 8, 2004), unpublished. In this case, the ALJ's reliance on Dr. Schonberg's opinion was not based upon substantial evidence, and is therefore unjustified because: (1) Dr. Schonberg was not aware that Plaintiff had achieved a full scale IQ score of 62 at age 14; (2) Dr. Schonberg was not aware that Dr. Hall had diagnosed Plaintiff with mental retardation at age 14; (3) Dr. Schonberg was not aware that Dr. Hall recommended placing Plaintiff in a special education class; (4) Dr.

Schonberg was not aware that the only reason Plaintiff was in regular classes was due to his mother's refusal to consent to a special education placement; (5) Dr. Schonberg did not address Plaintiff's junior and senior high school transcripts showing Plaintiff earned failing grades in almost every class; and (6) Dr. Schonberg's conclusion on November 3, 2003 that Plaintiff exhibited no evidence of cognitive retardation prior to his 18th birthday is inconsistent with his report dated December 19, 2002 stating that Plaintiff repeated three to four grades. Plaintiff's counsel presented all of this evidence to the ALJ, but the ALJ still afforded Dr. Schonberg's opinion the greatest weight, knowing that Dr. Schonberg had been operating under an erroneous belief.

Due to the overwhelming doubt surrounding Dr. Schonberg's opinion, the undersigned recommends remanding this case for the ALJ to determine whether Plaintiff is disabled after considering an expert opinion that has been based upon a review of Plaintiff's entire record of cognitive impairment.

**B. Legal precedent does not support Plaintiff's contention that the ALJ erred by not accounting for the standard error of measurement when considering IQ test results.**

Plaintiff further contends that the ALJ erred in finding Plaintiff not to be disabled and in relying upon Plaintiff's 2002 WAIS-III IQ score of 72 to reach that conclusion. ECF Dkt. #16 at 2. Plaintiff reasons that the ALJ failed to account for the fact that the Wechsler series of IQ tests has a standard error of measurement of 3.00 for the verbal test, 3.67 for the performance test, and 2.60 for the full scale score. *Id.*; ECF Dkt. #16 at 2-3. Plaintiff concludes that his 2002 WAIS-III IQ score of 72 actually represents a range of 69.4 to 74.6. *Id.* at 3. The Sixth Circuit has rejected this "margin of error" argument on several occasions because it is inconsistent with the plain meaning of Listing 12.05. *See Thurman v. Apfel*, No. 99-3587, 2000 WL 491673 at n. 5 (6th Cir. April 20, 2000), unreported (citing *Anderson v. Sullivan*, 925 F.2d 220, 223 (7th Cir. 1991)); *Newland v. Apel*, No. 97-4339, 1999 WL 435153 at *6 (6th Cir. June 17, 1999), unreported; *Smith* 1990 WL 92633 at *2. Accordingly, the undersigned recommends that the

Court deny this assertion.

### C. The Court should hold that Plaintiff has established a significant work-related limitation of function satisfying the second prong of Listing 12.05C.

The ALJ did not make a specific finding as to whether Plaintiff established the presence of a physical or mental impairment resulting in an additional and significant work related limitation, which is the second prong of Listing 12.05C. Tr. at 25-26, 29. The ALJ did accept as factual Plaintiff's statement that he left his most recent job due to physical problems. *Id*. at 26. The ALJ also found that Plaintiff suffered impairments that, in combination, reduce his ability to perform basic work related functions. *Id*. at 29. The ALJ found that Plaintiff retained the RFC to perform some of his past work, but the ALJ did not find that Plaintiff could return to his job as a box bander or as a nursing home assistant (jobs requiring medium exertion). *Id*.

The Sixth Circuit has held that, when an ALJ determines a claimant has an RFC that is less than the claimant's initial functional capacity, then the claimant has established as a matter of law that he satisfies the second prong of Listing 12.05C. *Riley v. Apfel*, No. 97-1799, 1998 WL 553151 at *4 (6th Cir. August 20, 1998), unreported. In *Riley*, a claimant filed for SSI benefits under Listing 12.05C, but the ALJ denied the claim, finding that the claimant had not satisfied either prong of 12.05C. *Id*. The ALJ in *Riley* also found that the claimant had previously worked at jobs requiring light to very heavy amounts of exertion, but following the onset of disability, the claimant maintained an RFC to perform only sedentary tasks. *Id*. at *1-4 The Sixth Circuit held that it was an error for the ALJ to find the claimant had not satisfied the second prong of Listing 12.05C at the same time he found the claimant's RFC permitted him to perform only a limited range of the jobs he used to perform. *Id*. The *Riley* court, however, affirmed the ALJ's opinion because the claimant had not carried his burden with regard to the first prong of Listing 12.05C, making the ALJ's error regarding the second prong harmless. *Id.* at *4-6. The case at bar is similar to *Riley* because the ALJ in this case found that Plaintiff can perform fewer jobs as a result of physical limitations. Plaintiff can no longer perform his job as

-16-

a box bander or as a nursing home assistant because they require a higher level of exertion than he can endure. Since Plaintiff has satisfied the second prong of Listing 12.05C as a matter of law, the Court should not remand the issue of his additional work-related limitation.

**D. Plaintiff's contention that the ALJ erred in rejecting Dr. Dye's report cannot be analyzed until the ALJ makes further findings on remand.**

Plaintiff contends that the ALJ erred in rejecting Dr. Dye's opinions and diagnoses in favor of Dr. Schonberg's. ECF Dkt. # 11 at 11-13. Having determined that the ALJ improperly relied upon Dr. Schonberg's opinion, the undersigned believes a determination of whether it was appropriate to reject Dr. Dye's opinion would be premature. A valid comparison of Dr. Dye's report and Dr. Schoberg's report cannot be made unless Dr. Schonberg addresses Plaintiff's entire medical record. Since that comparison requires a determination of fact, which is a duty within the province of the ALJ, the Court should not rule on the appropriateness of rejecting Dr. Dye's opinion. 42 U.S.C. § 405(g); *see also Schuler*,109 Fed.Appx. 101.

## V.    CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court reverse the Commissioner's final decision and remand the case for further factfinding, testimony, and articulation by the ALJ to determine: (1) whether Plaintiff is mentally retarded under the standard set forth in the introductory paragraph of Listing12.05; and (2) whether Plaintiff has a valid IQ between 60 and 70, as Listing 12.05C requires.

Date: September 17, 2007                              */s/George J. Limbert*
                                                      GEORGE J. LIMBERT
                                                      U.S. MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of receipt of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985); and Local Rule 72.3.